UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HORNBECK OFFSHORE OPERATORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GE RENEWABLES US LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-04776<br><br>Related to Civil Action No. 1:26-cv-04014-JSR |

**HORNBECK OFFSHORE OPERATORS, LLC'S COMPLAINT**

Plaintiff Hornbeck Offshore Operators, LLC ("Hornbeck") brings this Complaint against Defendant GE Renewables US LLC ("GERE").

## I. NEED FOR ACTION

1. In or around June 2025, GERE approached Hornbeck about chartering a vessel to service GERE's offshore-wind project off the United States East Coast, Vineyard Wind 1. Over the following months, the parties diligently negotiated the essential commercial terms of the agreement and a formal written charter party. On November 13, 2025, Hornbeck and GERE had agreed to the essential terms of the agreement: the charterer and vessel owner, the vessel to be chartered, the duration of the charter, the delivery date, the redelivery port, and the price. Under United States maritime law, the parties' agreement to these terms culminated in a binding agreement (a "fixture" in maritime parlance) despite the need to finalize some details of the agreement and formally execute the charter party.

2. GERE is a sophisticated company that knew and acknowledged that it had entered into a binding charter fixture. Nevertheless, on November 26, 2025, less than one month before

GERE was to take possession of the vessel, GERE repudiated the charter party in favor of chartering a different (presumably cheaper) vessel.

3. In the more than six months since GERE backed out of the parties' agreement, Hornbeck has worked diligently to mitigate its losses. Still, it has been unable to secure a charter party for the same price and duration as the charter fixture it entered into with GERE. Hornbeck brings this action to recover its losses and make itself whole.

## II. PARTIES

4. Plaintiff Hornbeck Offshore Operators, LLC is a Delaware limited liability company headquartered in Covington, Louisiana.

5. Defendant GE Renewables US LLC is a Delaware limited liability company headquartered in Greenwood Village, Colorado.

## III. JURISDICTION AND VENUE

6. This Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 because this action involves a maritime contract. This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

7. Hornbeck and GERE agreed to resolve Hornbeck's instant claim for breach of maritime charter party before this Court on May 22, 2026. *See GE Renewables US LLC v. Hornbeck Offshore Operators LLC*, No. 1:26-cv-04014-JRS, ECF No. 31 (S.D.N.Y. May 5, 2026). In light of this agreement, the parties have agreed that venue is proper in this district and that this Court has personal jurisdiction over Hornbeck and GERE for the purpose of this action.

## IV. FACTUAL BACKGROUND

8. Hornbeck is a leading supplier of marine transportation services to exploration and production, oilfield, offshore construction, and military customers. An example of a service offered by Hornbeck is the provision of so-called "flotel" vessels. Flotel vessels are vessels

positioned near offshore platforms where offshore charterer personnel (here, GERE-related personnel) eat, sleep, and relax during their off-hours.

9. GERE is a major provider of renewable energy equipment and services. In December 2020, GERE was selected as the preferred supplier of wind turbine generators for Vineyard Wind 1, a utility-scale offshore wind energy project that aims to generate clean energy from sixty-two wind turbines positioned off the coast of Massachusetts.

10. In June 2025, GERE contacted Hornbeck to discuss chartering an offshore support vessel to serve as a flotel for GERE-related personnel working on Vineyard Wind 1. GERE contacted Hornbeck through Tyler Boje, a ship-chartering broker employed by Clarksons Shipping Services USA LLC ("Clarksons") and Tyler Spofford ("Spofford"), GERE's Vineyard Marine Ops Package Manager.

11. Upon information and belief, Clarksons was hired to provide professional brokering advice to Spofford and others in connection with GERE's effort to charter a vessel.

12. Upon information and belief, GERE charged Spofford with entering into a charter fixture and a finalized charter party in connection with the Vineyard Wind 1 project.

13. Spofford was at all relevant times the Marine Ops Package Manager for GERE. Upon information and belief, this position gave Spofford decision making authority related to vessel fixtures and charter parties for GERE's offshore wind projects in the United States.

14. From the inception of and throughout the parties' relevant communications, GERE and Spofford held Spofford out as an agent for GERE having the authority to bind GERE as to the essential terms of the charter fixture and to finalize the charter party. Throughout the discussions between GERE and Hornbeck, Hornbeck reasonably relied on Spofford's authority and ability to bind GERE.

15. On June 25, 2025, the parties agreed that any agreement reached would be between Hornbeck and GERE.

16. On June 25, Hornbeck sent GERE a proposal matching GERE's charter needs. At that time, GERE had sought a one-year to five-year charter party with an estimated start date of November 1, 2025.

17. On June 25, the parties agreed that any charter party reached would be memorialized on a BIMCO SupplyTime 2017 charter party form (the "BIMCO Charter").[1] Following Hornbeck's proposal the parties began editing the standard-form BIMCO Charter to track the discussion.

18. On October 2, Spofford connected Hornbeck with Pierre Furic ("Furic") who, from that point on, worked in conjunction with Spofford as the two GERE personnel negotiating the charter fixture and charter party between Hornbeck and GERE.

19. GERE and Spofford held Furic out as an agent for GERE having the authority to bind GERE as to the essential terms of the charter fixture and to finalize the charter party.

20. Over the following months, GERE's charter needs, including the commencement date and charter duration, changed. On October 7, to accommodate GERE's updated charter parameters, Hornbeck sent a revised proposal for Hornbeck's offshore support vessel HOS BRIARWOOD. The revised proposal provided for a charter commencement date of December 15, 2025, a charter term of either twelve or thirty-six months, and a day rate that accommodated up to thirty-six GERE personnel and increased incrementally for every eight additional GERE personnel

[1] BIMCO SUPPLYTIME 2017 is a standard time charter party for offshore support vessels issued by the Baltic and International Maritime Council ("BIMCO"), an international shipping association representing vessel owners. It is a widely used charter party template that contains industry-standard terms.

beyond that threshold. Spofford agreed that the revised proposal sufficiently aligned with GERE's needs for Vineyard Wind 1.

21. At that point, the parties had agreed that HOS BRIARWOOD would be the vessel for any charter fixture that was ultimately entered into by Hornbeck and GERE. The parties further agreed on a day rate for HOS BRIARWOOD that varied based on the number of GERE-related personnel to be housed on the vessel.

22. After having reached agreement on the vessel and charter rate, Spofford and Furic were in nearly daily communication with Hornbeck to finalize the charter party prior to the anticipated charter commencement date. The parties met often, sent frequent emails and messages about the negotiations, and exchanged one edited version of the BIMCO Charter after another as the parties agreed to provisions and as GERE's offshore vessel needs continued to crystalize.

23. The parties met on October 23 and October 24 to review and discuss other terms of the charter party.

24. On or around October 24, the parties agreed that the charter duration would be ten months and the port of delivery and redelivery would be New Bedford, Massachusetts.

25. On October 31, Furic circulated an updated draft of the BIMCO Charter. This version listed the vessel as HOS BRIARWOOD; the delivery date as "circa 15th December 2025, TBD;" the charter term as ten months; and the port of delivery and redelivery as New Bedford, Massachusetts.

26. By early November, the parties were in daily discussions. On November 5, Kevin Douglass of Hornbeck circulated the Scope of Work with Hornbeck's comments and edits.

27. The parties met on November 6 to review the latest drafts. That same day, Furic circulated a draft of the Price Sheet and Scope of Work. The Price Sheet further memorialized the parties' agreement on day rate.

28. On November 10, Douglass circulated the BIMCO Charter for Spofford and Furic's review. This version of the BIMCO Charter listed the vessel as HOS BRIARWOOD; the delivery date as "Upon availability of the Vessel following redelivery from Owners' other customer, but no sooner than December 15, 2025 at 0001 hours;" the term as ten months "firm"; and the port of delivery and redelivery as New Bedford, Massachusetts.

29. The November 10 version of the BIMCO Charter also listed Spofford as GERE's representative. The representative listed in charter parties typically is the individual who ultimately signs the charter party on behalf of the vessel owner or charterer.

30. Hornbeck and GERE met again on November 11 to work through the updated draft of the BIMCO Charter.

31. On November 12, Furic sent additional edits to the BIMCO Charter.

32. On or around November 13, GERE requested that the charter duration be extended from ten months to twelve months. Hornbeck agreed.

33. On November 13, Spofford and Furic met with Hornbeck and agreed to the vessel delivery date along with various other details. In particular, Spofford and Furic agreed that HOS BRIARWOOD would be delivered to GERE "Upon availability of the vessel following redelivery from Owners' other customer, but no sooner than December 15, 2025 at 0001 hours."

34. By agreeing, on November 13, to the delivery date for HOS BRIARWOOD, Hornbeck and GERE reached an agreement as to the final essential term of the charter, thereby achieving a fixture for the charter of HOS BRIARWOOD.

35. During the same call, GERE informed Hornbeck that it intended to house fifty-two GERE personnel aboard. Under the agreed, variable price schedule, this would have increased the day rate. GERE asked whether Hornbeck could offer a discounted, fixed day rate if GERE locked in its number of GERE personnel on board at fifty-two rather than maintain the ability to vary the GERE personnel housed on the vessel. Hornbeck took this request under consideration.

36. Following the November 13 call, Furic wrote to Hornbeck and Spofford: "We have agreed that @Douglass, Kevin include [Hornbeck] positions directly into the [BIMCO] word format before next call , [sic] with the intention to close items. We understand that legal items will be remaining and will need a legal teams' discussion. Yet, we should be able to close a majority of commercial points." Furic had previously communicated to Hornbeck that review by GERE's legal team would be the "last step" in the long-form charter drafting process.

37. The parties continued to work through the documents in the days that followed. On November 16, 2025, Douglass circulated an updated version of the BIMCO Charter and volunteered Hornbeck to "create the file this week in BIMCO SmartCon"—meaning input the already-agreed upon terms into BIMCO's software system—which is typically one of the final steps before the full long-form charter party is finalized. This version of the BIMCO Charter listed the vessel as HOS BRIARWOOD; the delivery date as "Upon delivery of the Vessel following redelivery from Owners' other customers, but no sooner than December 15, 2025 at 0001 hours"; the duration as twelve months firm; and the port of delivery and redelivery as New Bedford, Massachusetts.

38. In this version of the BIMCO Charter, Douglass included notes highlighting that specific terms, including the date of delivery, had been completely and finally closed during the parties' November 13 meeting.

39. The parties met on November 17 to discuss the finalization of the long-form charter party. During this meeting, Hornbeck agreed, as an accommodation to GERE and in recognition of the fixed number of GERE personnel housed onboard, to a discounted day rate.

40. Following the November 17 call, Furic circulated an updated BIMCO Charter incorporating the results of the parties' discussion. In this version of the BIMCO Charter, Furic confirmed that, on November 13, the parties had come to a final agreement on the date of delivery of the vessel. Furic also circulated an updated Price Sheet, which confirmed the parties' agreement concerning the discounted day rate for HOS BRIARWOOD hosting fifty-two GERE personnel. Furic also confirmed in this version of the BIMCO Charter that Spofford was the appropriate representative for GERE.

41. The parties met again on November 18 to resolve the outstanding details to the long-form charter party. Toward the end of the meeting, and following agreements on certain details, Furic emphatically stated: "we have a contract" and indicated that he would enter the final, agreed details into the BIMCO Charter and circulate the updated long-form charter party to Hornbeck for finalization following the call.

42. Throughout the parties' discussions, Spofford and Furic agreed to terms without qualification. They never indicated that any terms would be subject to further approval. In fact, Spofford and Furic were the face of GERE throughout the parties' relationship.

43. Hornbeck relied on both Spofford's and Furic's representations and the way they had been held out as having authority to bind GERE.

44. Upon information and belief (but unknown to Hornbeck at the time), around the same time Hornbeck and GERE had reached a fixture, GERE entered into discussions with a competitor of Hornbeck to address GERE's vessel needs in respect of Vineyard Wind 1.

45. Following this contact with Hornbeck's competitor, Spofford and Furic's comportment changed dramatically. On November 19, having not yet received the updated BIMCO Charter as promised by Furic, Douglass inquired of Furic as to the status of the BIMCO Charter. Furic stated that he had inadvertently saved over his changes to the BIMCO Charter but assured Douglass that he remembered the edits and would circulate the updated draft.

46. On November 20, Hornbeck learned that Spofford had traveled to Port Fourchon, Louisiana, the dominant nationwide hub for offshore supply vessels. Hornbeck came to understand that Spofford's visit was for the purpose of touring the competitor's vessel.

47. On November 21, Furic still had not recirculated the updated BIMCO Charter. In an effort to distance GERE from the agreement, Furic wrote to Douglass in an email on November 21: "as discussed, we haven't been able to take clear decision." This was the very first time Furic or any GERE representative had ever indicated any issues with respect to GERE's decision-making process.

48. On or around November 24, Adam Shrives, another member of the Hornbeck team, had a conversation with Boje, GERE's broker, to inquire about the unanticipated delays on finalizing the BIMCO Charter. Boje assured Shrives that the parties had a fixture.

49. The parties had a call on November 26, during which GERE officially repudiated the parties' agreement.

50. During the November 26 call, Hornbeck's president, Todd Hornbeck, directly asked Boje if there had been an agreement between Hornbeck and GERE. On the call, with all parties present, Boje confirmed that a charter had been fixed.

51. GERE personnel offered no response to Boje's statement, except to claim that the parties had not yet agreed on details for minor pre-operation modifications for HOS BRIARWOOD—an issue far outside the main terms of the fixture.

52. Upon information and belief, Boje remained on the line with GERE, at which time Boje reiterated to GERE that GERE and Hornbeck had reached a binding fixture.

53. On or around December 6, Boje relayed to Michael Nicaud, another member of the Hornbeck team, that if he had to testify, he would confirm that the parties had a contract.

54. On December 8, Hornbeck sent GERE a letter addressed to Tyler Spofford, stating that the parties had a binding fixture and relaying that Hornbeck remained ready to perform the contract as the parties had agreed.

55. Despite amicable demand, GERE refused to honor the fixture or complete negotiations to reach a formal, written charter on the BIMCO Charter form, so Hornbeck declared GERE to be in breach.

56. Following GERE's breach, Hornbeck sought to resolve the dispute consistent with the alternative dispute resolution provision in the BIMCO Charter. But GERE refused.

57. On May 22, 2026, both parties agreed to waive arbitration and resolve this dispute before this Court.

## V. CAUSE OF ACTION
## Breach of Maritime Charter Party Fixture

58. Hornbeck repeats and realleges, as if fully set forth herein, the allegations of all of the preceding paragraphs.

59. By November 14, 2025, or, in the alternative, by November 17, 2025, Hornbeck and GERE agreed to a fixture for HOS BRIARWOOD.

60. Hornbeck and GERE entered into a binding fixture for GERE's charter from Hornbeck of HOS BRIARWOOD, to begin "Upon availability of the Vessel following redelivery from Owners' other customer, but no sooner than December 15, 2025 at 0001 hours," for a period of twelve months, for the discounted day rate for up to fifty-two GERE-personnel, with the port of delivery and redelivery as New Bedford, Massachusetts.

61. Hornbeck was prepared to comply with its obligations under the fixture (and anticipated long-form time charter), including by making HOS BRIARWOOD available for GERE's use to the exclusion of other potential charterers.

62. GERE, on the other hand, refused to perform its obligations under the parties' binding fixture when faced with an opportunity to charter a different vessel, presumably at a lower rate. GERE's refusal included the refusal to accept delivery of HOS BRIARWOOD or pay Hornbeck what it is owed under the fixture.

63. GERE's refusal to perform constitutes a breach of the parties' fixture for which GERE is liable to Hornbeck.

64. From the time GERE breached the fixture, Hornbeck has made commercially reasonable efforts to recharter HOS BRIARWOOD. Despite its efforts, Hornbeck has been unable to recharter HOS BRIARWOOD for a charter of the same day rate and duration as GERE had agreed to charter HOS BRIARWOOD.

65. Even if Hornbeck is successful in rechartering HOS BRIARWOOD, Hornbeck will not be made whole because Hornbeck's fleet includes vessels comparable to HOS BRIARWOOD that Hornbeck could and would have chartered if GERE had honored the charter fixture.

66. Hornbeck has been damaged as a result of GERE's breach of the charter fixture. Hornbeck has suffered lost profits; continues to pay expenses HOS BRIARWOOD has incurred

and continues to incur which, under the terms of the charter party, would have been passed on to GERE; and has been forced to pay costs associated with mitigating its damages. Hornbeck has also been required to hire counsel, incur legal costs, and pursue legal relief because of GERE's breach. The extent and amount of Hornbeck's damages is not yet capable of determination.

## VI. PRAYER FOR RELIEF

WHEREFORE, Hornbeck respectfully requests that this Court:

A. Find that Hornbeck and GERE entered into a binding charter party and that GERE breached that charter party;

B. Award Hornbeck damages, including, without limitation, lost profits, reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

C. Any other legal or equitable relief that this Court deems fit.

Dated: June 05, 2026

Respectfully submitted,

*s/ Matthew Tripolitsiotis*

Matthew Tripolitsiotis (MT9413)
BURNS CHAREST LLP
757 Third Ave, 20th Floor
New York, New York 10017
Tel.: (469) 895-5269
Fax: (469) 444-5002
mtripolitsiotis@burnscharest.com

Daniel H. Charest (*pro hac vice* applicant)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Tel.: (469) 904-4550
Fax: (469) 444-5002
dcharest@burnscharest.com

Claire B. Curwick (*pro hac vice* applicant)
Lauren M. Perry (*pro hac vice* applicant)
BURNS CHAREST LLP
201 St. Charles Avenue, Suite 2900
New Orleans, Louisiana 70170
Tel.: (504) 799-2845
Fax: (504) 881-1765
ccurwick@burnscharest.com
lperry@burnscharest.com

Counsel for Hornbeck Offshore Operators, LLC